THE ADVANCE THRESHER COMPANY, Appellant, v. FRANK PIERCE and B. ERISMAN, Respondents.

St. Louis Court of Appeals, April 29, 1898.

1. **Contract**: WAIVER: PLEADING: GENERAL DENIAL. Conceding that the special plea of waiver in the amended answer is insufficient, yet the general denial puts in issue the plaintiff's right to the possession of the property, at the commencement of the action, and every collateral fact necessary to the establishment of the same.

2. ———: ———: PLEADING IN REPLEVIN SUIT. Under a general denial in a replevin suit the defendant may show anything that will defeat the plaintiff's right to possession.

3. **Waiver of Contract.** To constitute waiver there must be actual knowledge of all the facts and an acquiescence in the failure of the other party to have lived up to the letter of his contract.

*Appeal from the Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED AND REMANDED.

E. C. KENNAN and B. WELLS for appellant.

The pleading of defendants as to waiver and their evidence are fiction and unsupported. The waiver then being out of the way the defendants must fail in their defense. They have not performed the condition precedent. Nichols, Sheperd & Co. v. Larkin, 79 Mo. 264; Nichols, Sheperd & Co. v. Hall, 4 Neb. 210; Craycroft v. Walker, 26 Mo. App. 469; Bomberger v. Griener, 18 Iowa, 480; Neenan v. Donoghue, 50 Mo.

493; Monks v. Miller, 13 Mo. App. 363; Deere, Mansur & Co. v. Hucht, 27 Mo. App. 1.   The defendants did not prove any waiver at all, but submitted the letter of Mr. Skinner unsupported by any testimony of knowledge on the part of Skinner as to when the machinery was started.   "In order to constitute waiver for defects in the construction of a house, not only the subsequent use of the structure but knowledge of and acquiescence in the defect must be made to appear." Haysler v. Owens, 61 Mo. 270.   "He who relies on a waiver must show that it was made with knowledge of the material facts."   Dyas v. Hanson, 14 Mo. App. 363.   "A receipt given for a windmill stating that 'it is in good order as per contract;'  'Held, that such receipt can not operate to bar defendant's right to show the truth in controversy, as to constitute a waiver there must be both knowledge of the defect and acquiescence.' "   Fairbanks & Co. v. DeLissa, 36 Mo. App. 711; Mohney v. Reed, 40 Mo. App. 100.

W. W. FRY and RHODES CLAY for respondents.

A general denial in an action of replevin is sufficient to raise the question of waiver.   This plea, under the code, "puts in issue the plaintiff's right to the possession of the property at the commencement of the action and every collateral fact necessary to the establishment of the same."   Oester v. Sitlington, 115 Mo. 47; Stern v. Mason, 16 Mo. App. 473; Pugh v. Williamson, 61 Mo. App. 165.   The answer in this case was not only general denial, but there was a specific plea of waiver.   There is, therefore, nothing in plaintiff's claim that a waiver was not sufficiently pleaded. Waiver is a question of intention and a fact to be determined by the jury.   Under the evidence, if the giving of a written notice was a condition precedent and the notice was not given in time, plaintiff clearly waived the same.

BLAND, P. J.—The appellant is a Michigan corporation. On or about the thirtieth day of May, 1895, respondents purchased from appellant, through its local agent, H. L. Ahlfeldt, at Laddonia, Missouri, one fifteen horse power compound steam traction engine and one grain separator, with the usual fixtures and appendages, for which they executed their note to appellant for $1,115. At the same time they purchased and ordered a straw stacker, known as the "Uncle Tom," under the following written stipulations and warranties:

"Dated at BENTON CITY, Mo., May 30th, 1895. *"Advance Thresher Company, Battle Creek, Mich.*

"You will please attach an Uncle Tom (instead of your regular stacker) to the separator heretofore ordered by me from you. I propose to run this separator with an engine made by Advance Thresher Co., of 15 compound horse power.

"In consideration whereof, I agree to receive said stacker upon its arrival, subject to all the conditions of the warranty and agreement printed below, and pay in cash the F. O. B., Laddonia, Mo. I also agree to pay to your order, for said stacker, at the time and place of delivery of said separator with said stacker attached, the sum of two hundred and thirty-five dollars in addition to the amount to be paid for said separator, to be paid as follows: Cash $——; note due Oct. 1st, 1895, for $235. Note due —— 189– for $——. Said notes to be made payable to the order of Advance Thresher Company, and each bearing interest at — per cent from date of delivery of said stacker until paid.

"The above stacker is ordered, purchased and sold subject to the following express warranty and agreement, and none other, viz:

"That the said stacker is well made, of good material, and when properly run and rightly managed

will carry off the straw and chaff and stack them together, clear of the separator, with the help of one man to direct the chute and blast. It is expressly agreed that upon starting this stacker, if the undersigned are not able to make it operate well, written notice by registered letter, stating wherein it fails to satisfy the warranty, is to be immediately given by the undersigned to The Advance Thresher Company, at Battle Creek, Michigan, and also to the dealer through whom purchased, and reasonable time allowed them to get to it and remedy the defect, if any, unless it is of such a nature that they can advise by letter, and the undersigned hereby agree to render all necessary and friendly assistance, and that if they fail to make said stacker perform, through improper management or lack of proper appliances, they will pay all necessary expenses incurred. It is expressly agreed that any failure or deficiency in said stacker shall be reported by the undersigned in writing, by registered letter, as above stated, within five days after starting said stacker, and longer use, or use without such written notice is conclusive evidence of satisfaction and fulfillment of all warranty.

"It is expressly understood and agreed, that all warranty on this stacker terminates and expires, and all liability of the Advance Thresher Company to an action for breach of warranty or recoupment for damages, set-off or otherwise, ceases entirely at the close of this year, and statute of limitations to the contrary notwithstanding, and that all warranty is to be invalid if this stacker is not fully settled for when delivered.

"It is expressly agreed that if any part of said stacker fails during this year, in consequence of defect in material of said part, the Advance Thresher Company have the option to repair the same or to furnish

a duplicate of said part free of charge, except freight, after presentation of the defective piece, clearly showing flaw in material, at the factory or to the dealer through whom said stacker was bought, at any time within this year, but deficiencies in any piece not to condemn other parts.

"It is further expressly understood and agreed by the undersigned that the sale and warranty of this stacker is wholly separate and distinct from the warranty and sale of any other machinery and of the separator to which this stacker is attached, and that a failure in whole or in part in said stacker in no way affects the sale or warranty of said separator or other machinery, but that if said stacker can not be made to work as warranted, then the undersigned may remove the same from said separator and may order from said Advance Thresher Company their regular ordinary stacker, eighteen feet long, with raddle, belts, shafts, etc., complete, to attach to said separator at a cost of thirty dollars ($30) and freight, and the cash and notes given in settlement of this Farmer's Friend stacker shall be returned or credited upon the notes of the undersigned, and said Advance Thresher Company shall be discharged from all liability whatever on account of said stacker."

For the straw stacker the respondents agreed to pay $235, and executed their note to appellants for that amount, due October 1, 1895. To secure the above notes the respondents executed to the appellant a chattel mortgage on all the machinery purchased. The $1,115 note was paid; the $235 note for the straw stacker the respondents refused to pay, and appellant brought its suit to replevy all the property included in the chattel mortgage. Respondents by an amended answer plead the general issue, and specially, *first*, that respondents did not own or claim the straw

stacker, and denied that they detained it; *second*, the warranty of the stacker by appellant and a breach of that warranty; *third*, a compliance with all the conditions on their part of the contract for the purchase of the stacker; *fourth*, a waiver on the part of appellant of the five days' notice, contemplated by the contract, of the unsatisfactory operation of the stacker; and, *fifth*, that on September 4, 1895, they gave notice to appellant in the mode provided by the contract, of the fact that the stacker was a failure, and that the notice was received by appellant and accepted as notice given in time under the contract, and that on said day they offered to return the stacker to appellant at the place where they received it, and had repeatedly, after said date, offered to return the stacker.

A reply was filed to the new matter contained in the amended answer. On trial by jury a verdict was rendered for the respondents, from which, after an unsuccessful motion for new trial, the thresher company duly appealed.

The evidence on the part of the respondents tended to prove that they started to operate the stacker some time in the month of July and continued to thresh and use the stacker, until about the first of September following, when they abandoned the stacker and gave notice by registered letter to appellant that it did not operate well, the receipt of which was acknowledged by letter, in which appellant agreed to send a man immediately to remedy the defects in the stacker. The man, however, was never sent. That when respondents first attempted to operate the stacker it choked up and did not work well, and in two or three days after starting it Mr. Ahlfeldt, the agent of appellant, did some work on it to prevent it choking up; that N. S. Cook, who had charge of the general agents of the appellant, about the twenty-sixth

day of July, 1895, and Gilkerson, appellant's traveling expert, went to where respondents were threshing and did some work on the engine and straw stacker; that Ahlfeldt had repeated notice that the stacker was not working well. The evidence tended also to show that defendants were experienced in operating threshing machines, but that they were unable to do good work with the stacker, and that it was a failure as a stacker of straw. On the part of the appellant the evidence tended to show that at the time its secretary received the notice of September 4, and answered respondents' letter it had no information of the time they had started to operate the stacker, and no intention to waive any part of the conditions of the contract made with the respondents in the sale of the stacker.

. Appellant asked, but the court refused to give, a peremptory instruction to find the issue for it. This refusal is assigned as error. Appellant's contention on this assignment is that there is no evidence of a waiver of the contract; that respondent should within five days give notice to it if the stacker did not work well, and that there is no sufficient plea of such waiver. Conceding that the special plea of waiver in the amended answer is insufficient, yet the general denial, as was said by Judge MacFarland in Oester v. Sitlington, 115 Mo. loc. cit. 257, "puts in issue PLEADING: effect of general denial. the plaintiff's right to the possession of the property at the commencement of the action, and every collateral fact necessary to the establishment of the same."

Under a general denial in a replevin suit, the defendant may show anything that will defeat the plaintiff's right to possession. Pugh v. Williamson, 61 Mo. App. 165. Nor are we prepared to say there was no evidence of a waiver. From the fact that Ahlfeldt, appellant's local agent, Cook its general agent, and

Gilkerson, its traveling expert, had all seen the stacker in respondents possession, had notice of its defects and had tried to remedy the same by working on it and making alterations and supplying some new appendages, and from appellant's letter of September 12, the jury might have very well inferred that the company had been informed of the unsatisfactory operation of the stacker.

The instructions given by the court on behalf of appellant were favorable to it, and covered fully every issue presented by the pleadings and the evidence. The court at the instance of the respondents gave the following instruction:

"The court instructs the jury that if they find from the evidence that the plaintiff sold the defendants the stacker in question to be used by defendants in stacking straw in connection with a thresher purchased by defendants of plaintiff at the same time, and the jury further find from the evidence that said stacker would not and did not do said work; and the jury find from the evidence that the said stacker was worthless and that defendants on the —— day of September, 1895, gave written notice by registered letter to plaintiff at Battle Creek, Michigan, and also to the local agent, of the insufficiency of said stacker, and that plaintiff at the time of receiving said notice knew or by the exercise of ordinary care might have known that at the time of said notice, the said stacker had been in operation for more than five days previous to said notice, wrote to defendants promising to send a man immediately to remedy anything wrong with said stacker, to assist defendants in making it do good work, and that plaintiff intended thereby to waive' the failure of defendants to give notice of the insufficiency of said stacker within five days after it was

INSTRUCTION.

started in operation, then the verdict will be for the defendants.'

This instruction is erroneous.   The appellant, under its contract with the respondent, was not required to keep track of the stacker or of its operation in the hands of the respondents.   It was under no duty to them to follow up their operations with the stacker and to take notice of its work.   On the contrary, by express contract, the respondents agreed to give written notice to it if the stacker failed to do the work it was warranted to do, and the appellant had a perfect right to look to respondents for information concerning the workings of the stacker, and were not required to make inquiry at any place or from any person about the stacker, nor were they required to do so upon rumor or from adverse reports, unless such reports came from their duly authorized agents, to make examination and reports of the workings of their machinery in the neighborhood of Laddonia.   From the testimony under this instruction the jury might have found that the appellant did not have actual notice of the unsatisfactory operation of the stacker at the time it answered the notice of September 4; yet, if by the exercise of ordinary diligence — that is, if it had inquired, or directed its local or traveling agents to inquire, it could have known that the stacker was not doing good work, and for failure to have so inquired, found their verdict for the respondents.   To constitute waiver there must be actual knowledge of all the facts and an acquiescence in the failure of the other party to have lived up to the letter of his contract. Johnson Co. v. Lowe, 72 Mo. 637;   Mohney v. Reed, 40 Mo. App. 99;  Haysler v. Owen, 61 Mo. 270.   For this error the judgment is reversed and the cause remanded. All concur.